IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

J'DONTA DEL'MARCO BRITT                                                    PLAINTIFF

v.                          Civil No.  5:15-cv-05050

DEPUTY GRAHAM ROBINSON                                                     DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights case filed pursuant to 42 U.S.C. § 1983.  Plaintiff, J'Donta Del'Marco Britt, proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Varner Supermax Unit of the Arkansas Department of Correction ("ADC").  The events that are the subject of this case occurred while the Plaintiff was incarcerated at the Washington County Detention Center ("WCDC").

Plaintiff maintains the Defendant violated his federal constitutional rights by verbally harassing him on numerous occasions and by using excessive force against him.  (Doc. 1) Defendant has filed a Summary Judgment Motion (Doc. 16).  On December 10, 2015, a summary judgment hearing was held.  The Plaintiff appeared by video.

**1.  Background**

Plaintiff was booked into the WCDC on June 9, 2013, and he remained incarcerated there until March of 2015.  Plaintiff testified that Defendant's harassment of him started in February of 2014.  The harassment was "spur of the moment" and Plaintiff was unaware of any event that would have precipitated  it.  The harassment consisted of the use of foul language, racially derogatory terms, and talking about "sensitive subjects" such as family members and things that

-1-

"shouldn't be talked about." Plaintiff told the Defendant that he did not want to play around that way or be treated that way.

The verbal harassment increased around March of 2014. In a one week period of time, Plaintiff testified the Defendant would harass him once or twice. Plaintiff testified Defendant usually saw the Plaintiff three to four times a week.

Plaintiff submitted his first grievance about Defendant's harassment in March of 2014. Plaintiff could not recall the response to the grievance. However, the issue appeared to be corrected; the harassment stopped for six or seven months - until early October. After which time, the verbal harassment started up again.

On October 21, 2014, and November 11, 2014, Plaintiff testified the Defendant unnecessarily "put his hands" on him. On October 21, 2014, Plaintiff testified they were eating when he found a hair in his food. Defendant was going to bring a replacement tray, but he never gave it to the Plaintiff. Plaintiff testified he was going to file a grievance, but then Defendant called him out of GED[1] class and pushed him, approximately two to three inches, back against the wall. Plaintiff sustained no injury. Defendant was disciplined for his conduct.

On November 11, 2014 the two got into an altercation. Defendant came into the pod and went upstairs to see if the inmates wanted to clean. Despite having everything with him and being told the inmates wanted to clean, Plaintiff testified Defendant went back down stairs to the bathroom and cleaned it. At this point, Plaintiff testified he began banging on the door.

Defendant popped the door open and gave Plaintiff the dust mop. Plaintiff swept the cell out. Plaintiff testified he did not believe the mop was clean and asked Defendant to wring it out.

---

[1] Graduate Equivalency Degree.

-2-

According to Plaintiff, Defendant, in disrespectful language, responded that Plaintiff could wring out his own mop. Defendant threw the mop downstairs. Plaintiff started for the stairs to go down to get the mop and wring it out. Defendant grabbed Plaintiff by the shirt and pulled him towards Defendant. Plaintiff pulled back and an altercation ensued.

After things had calmed down, Plaintiff testified he asked for medical attention for back pain. He testified the altercation aggravated his pre-existing back pain. His lip was "busted" and he had scratches on his neck. Plaintiff was prescribed Ibuprofen and his back was x-rayed.

### The Video

Defendant submitted a video of the November incident. There is no audio. Defendant is seen wheeling a mop bucket/wringer with a mop, dust mop, and other cleaning equipment into L pod. Plaintiff's cell is upstairs, L 22. Defendant goes upstairs holding the dust mop in one hand and the mop in the other. He stops outside of cell 22 and appears to be talking to an inmate - presumably the Plaintiff. Defendant then opens the door and hands the dust mop in. For some reason, Defendant throws the mop downstairs instead of giving it to the Plaintiff to use. Plaintiff comes into the hall pushing the dust mop.

When Plaintiff is at the top of the stairs, Defendant grabs the Plaintiff in the right shoulder area and begins to turn Plaintiff.[2] At that point it becomes a struggle with both using force against each other. They fall to the floor near the open door to cell 23. The two are wrestling with Plaintiff ending up in the dominant position when officers arrive to assist the Defendant.[3] Until the officers arrive to assist, Defendant is the only officer present and there are no other inmates out of their cells but the doors to cells L22 and L23 are open.

---

[2] At 22:47 on the second video clip.

[3] At 23:09 on the second video clip.

AO72A
(Rev. 8/82)

### 2. Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.*, 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### 3. Discussion

Defendant contends he is entitled to summary judgment on the following grounds: (1) verbal harassment does not amount to a constitutional violation; (2) the only force used was reasonable in light of the circumstances; (3) he is entitled to qualified immunity; and, (4) there are no grounds for an official capacity claim.

### A. Verbal Abuse

"Verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); *Martin*, 780 F.2d at 1338-1339 (being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (use of racially offensive language in dealing with a prisoner does not, by itself, state a claim); *Cf. Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) (A claim was stated where the prisoner alleged "that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death."). In short, "[a]lthough such behavior may be unprofessional, it is not unconstitutional." *Kendrick v. Faust*, 682 F. Supp. 2nd 932, 944 (E.D. Ark. 2010).

### B. Excessive Force

"When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (*quoting Hudson v. McMilliam*, 503 U.S. 1, 6-7 (1992)). "[E]very malicious push or shove does not amount to a deprivation of constitutional rights." *Hickey v. Reeder,* 12 F.3d 754, 757 (8th Cir. 1993).

The Court must consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, the threat to the safety of the staff and inmates, and any attempt to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

In *Wilkins v. Gaddy*, 590 U.S. 34 (2010), the Supreme Court held that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim." *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010).

### 1. October 21, 2014 Incident

With respect to the incident on October 21, 2014, the force used was minimal at best. By Plaintiff's own testimony, he was pushed a mere two to three inches onto the wall. Plaintiff did not testify that any extraordinary amount of force was used by the Defendant which would cause Plaintiff to impact suddenly and painfully with the wall. Plaintiff suffered no injury as a result which belies the use of excessive force. Defendant is entitled to summary judgment on this claim.

### 2. November 11, 2014 Incident

With respect to the incident on November 11, 2014, in light of the video, there is no genuine issue of material fact as to whether the force used by the Defendant was excessive. Defendant initially grabbed the Plaintiff in the shoulder area and tried to turn him. It then became a free for all with the two wrestling. Plaintiff was clearly resisting, struggling with, and hitting the Defendant. In fact, Plaintiff becomes the aggressor and over powers the Defendant. There is no indication that the Defendant was acting maliciously or with the intent to cause the Plaintiff harm.

Having found there is no genuine issue of material fact as to whether a constitutional violation exists, it is unnecessary to address qualified immunity. *See e.g., Siegert v. Gilley*, 500

U.S. 226, 232 (1991) (Threshold issue in any qualified immunity claim is whether the "plaintiff has asserted a violation of a constitutional right at all.").

### C. Official Capacity

With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claims are treated as claims against Washington County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.,* 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Washington County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).

*Id*. at 817-18.

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final

AO72A
(Rev. 8/82)

authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Plaintiff pointed to no unconstitutional policy.

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. It stated:

> To establish a claim for "custom" liability, [Plaintiff] must demonstrate:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted).

Here, Plaintiff has shown nothing except verbal abuse and an alleged unconstitutional use of force on two occasions. He does not contend the WCDC policies and customs were themselves unconstitutional. A single deviation is insufficient to establish a custom. *Id.* at 829. Multiple incidents occurring over a course of time are needed to establish a custom. *Id.* Plaintiff's allegations in this case do not suggest the existence of any unconstitutional policy or custom of Washington County. Defendant is entitled to summary judgment on the official capacity claim.

### 4. Conclusion

For the reasons stated, I recommend that Defendant's Motion for Summary Judgment (Doc. 16) be **GRANTED and this case be DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

AO72A
(Rev. 8/82)

**objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of May, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)